IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| RANDALL SMITH, RODRIGO ANDRADE RIGAZZI, JENNIFER BEUSHAUSEN, AND SHANNON VENDT, | § | |
| Plaintiffs, | § | |
| vs. | § | CAUSE NO. 4:24-CV-1425 |
| ABSG CONSULTING, INC. AND ABS GROUP OF COMPANIES, INC., | § | |
| Defendants. | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL PETITION

COMES NOW Plaintiffs Randall Smith, Rodrigo Andrade Rigazzi, Jennifer Beushausen, and Shannon Vendt ("Plaintiffs"), and for their Original Complaint ("Complaint") against Defendants ABSG Consulting, Inc. and ABS Group of Companies, Inc. ("Defendants"), they state and allege as follows:

## PRELIMINARY STATEMENT

1. This is an action seeking declaratory, injunctive, and equitable relief, as well as monetary damages, to redress Defendant's violations of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Texas Labor Code.

2. Specifically, Defendant violated the ADEA, Title VII, and Texas Labor Code by not only subjecting Plaintiff to harassment based on their age but terminating each of the Plaintiffs' employment because of their age.

3.  Defendant further retaliated against Plaintiffs in violation of the ADEA, Title VII, and Texas Labor Code when Defendants improperly classified Plaintiffs' terminations as for cause after complaints were raised about illegal discrimination and harassment.

4.  Defendant's unlawful conduct was knowing, malicious, willful, wanton, and/or showed a reckless disregard for Plaintiffs' protected rights, which has caused and continues to cause Plaintiffs to suffer substantial economic and non-economic damages.

<u>**PARTIES**</u>

5.  Plaintiff Randall Smith ("Plaintiff Smith") is a sixty-nine-year-old, former employee of Defendant. Defendant employed Plaintiff Smith in December 2021 and then terminated Plaintiff Smith in June 2023. Plaintiff is a resident of Texas, and all events took place while Plaintiff was employed in Texas. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

6.  Plaintiff Rodrigo Andrade ("Plaintiff Rodrigo-Andrade") is a fifty-six-year-old former employee of Defendant. Defendant employed Plaintiff Rodrigo-Andrade for twelve years until his termination in June 2023. Plaintiff is a resident of Texas, and all events at issue in this case took place while Plaintiff was employed in Texas. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

7.  Plaintiff Jennifer Beushausen ("Plaintiff Beushausen") is a fifty-six-year-old former employee of Defendant. Defendant employed Plaintiff Beushausen until she was terminated in June 2023. Plaintiff is a resident of North Carolina, but the actions complained of were all part of the transaction and/or occurrence giving rise to the claims asserted by the other Plaintiffs in

this case and asserts common questions of fact and law as the other Plaintiffs. *See* Fed. R. Civ. P. 20(a). At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

8.  Plaintiff Shannon Vendt ("Plaintiff Vendt") is a forty-six-year-old former employee of Defendant. Defendant employed Plaintiff Vendt until she was terminated in June 2023. Plaintiff is a resident of Texas, and all events took place while Plaintiff was employed in Texas. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

9.  Defendant ABSG Consulting, Inc., ("Defendant ABSG") is a corporation with its principal place of business located at 1701 City Plaza Drive, Spring, Texas 77389.

10. Defendant ABSG had 20 or more employees during the relevant time period.

11. Defendant ABS Group of Companies, Inc., ("Defendant ABS Group") is a corporation with its principal place of business located at 1701 City Plaza Drive, Spring, Texas 77389.

12. Defendant ABS Group had 20 or more employees during the relevant time period.

13. At all relevant times, Defendant met the definition of "employer" under all applicable statutes.

## JURISDICTION AND VENUE

14. This Court has jurisdiction because the causes of action assert claims of federal question under 28 U.S.C. §1331.

15. Defendants each employ the requisite number of employees for coverage under the relevant state laws and statutes upon which Plaintiff's claims are based.

16. Furthermore, this Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. §1367(a).

## **VENUE**

17. Venue is proper in this District because all or a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Harris County, Texas. 28 U.S.C §1391(e)(iii).

## **PROCEDURAL REQUIREMENTS**

18. Plaintiffs Smith, Rodrigo Andrade Rigazzi, and Vendt each filed Charges of Discrimination with the Texas Workforce Commission, and the Charges were dual filed with the Equal Employment Opportunity Commission pursuant to those agencies' work sharing agreement.

19. Plaintiff Beushausen filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and the Charge was dual filed with the North Carolina Human Relations Commission pursuant to those agencies' work sharing agreement.

20. The Charges were all filed within 180 days after the date on which the complained of employment practices were committed.

21. More than 180 days have passed since the Charges were filed.

22. Plaintiffs have each timely exhausted all administrative remedies.

## FACTUAL ALLEGATIONS

**Plaintiff Smith's Employment with Defendant**

23. Plaintiff Smith is a 69-year-old former employee of Defendant.

24. In the spring of 2022, when Mr. Woods was promoted to Vice President, Plaintiff Smith inquired about the opportunity to take over Mr. Woods' previous position. Mr. Woods responded to Plaintiff Smith by stating that "while you are fully capable, your career runway is too short" implying that Plaintiff Smith's age prevented him from assuming that position.

25. Plaintiff Smith had been meeting and exceeding the expectations set by his managers through the first part of 2023.

26. In the second quarter of 2023, ABS reset Plaintiff Smith's quotas.

27. Upon receiving this new quota, Plaintiff Smith approached Defendant's management about the fact that the quotas were highly unrealistic.

28. In response to Plaintiff Smith's complaints about the unrealistic nature of the new quota, senior management assured Plaintiff Smith many times that they understood the sales goals to be unrealistic and were otherwise pleased with my performance.

29. In fact, at Plaintiff Smith's most recent review in December/January Plaintiff Smith's performance was deemed to be "Fully Meets Expectations", "Exceeds Expectations", and "Outstanding."

30. Only one category listed Plaintiff Smith as "improvement required" but even then Plaintiff Smith's manager's comments clearly stated that this low rating was only because Plaintiff Smith was having to "build a base from scratch" and that Plaintiff Smith had "ramped up well and [his manager] expect next year to be a [SIC] on target year."

31. Plaintiff Smith's low rating in this one area was actually downgraded from what his direct manager had initially rated him at.  This was done at the specific direction of Mr. Woods, Human Resources, and the other senior level management of Defendant.

32. Despite assurances from Mr. Woods that there would be a re-distribution of the accounts so as to help his meet his new sales quotas, that did not occur during his employment. All the efforts of Plaintiff Smith's direct supervisor to address the inequities in the sales department among the sales personnel were ignored by Defendant's senior level managers.

33. Absolutely no prior notice was given to Plaintiff Smith that Defendant was reviewing his position or that his job was in anyway in jeopardy. In fact, before Plaintiff Smith was notified of his termination, he had never been told that the Defendant was considering any action that would impact his position. There were never any warnings, Performance Improvement Plans or any other actions discussed.

34. In early 2023, at a point when Plaintiff Smith was generating more sales than the other two salespersons combined (one of whom - Mr. Jason Smith - who is significantly younger than Plaintiff Smith and not only survived the terminations in June, but was in fact promoted), Plaintiff Smith was informed that he had to transfer over $1 million in opportunities to the younger sales persons including Mr. Jason Smith in order to help them reach their quotas.

35. Plaintiff Smith was further terminated days before he was set to close a $600,000.00 account.

36. After Plaintiff Smith was terminated, the Company gave his job duties to a substantially younger, less qualified employee.

37. At all times relevant hereto, Plaintiff Smith was qualified for his position as a Sales Manager-Reliability with Defendant.

**Plaintiff Andrade Rigazzi's Employment with Defendant**

38. Plaintiff Andrade Rigazzi was employed by Defendants for twelve (12) years. In 2016 Plaintiff Andrade Rigazzi was made a Director and was moved to the United States in February 2020.

39. In January 2023, Defendant appointed Plaintiff Andrade Rigazzi to a Director of Business Development for the Americas position.

40. Throughout the first part of 2023, Plaintiff Andrade Rigazzi was meeting all the sales goals set for him and was further informed that he was doing an excellent job.

41. For the first quarter of 2023, Plaintiff Andrade Rigazzi met all of his sales goals and was paid his entire sales incentive payment.

42. Like the other Plaintiffs, early in the second quarter of 2023, senior leadership announced new sales goals for him and the other Plaintiffs.

43. Even though Plaintiff Andrade Rigazzi was on target to meet his second quarter goals, ABSG's senior leadership recognized and communicated to him and the other Plaintiffs that the goals

were highly "unrealistic" and "unattainable" and the Plaintiffs need to not be concerned about this fact since management understood that these expectation were not realistically reachable.

44. Despite the fact that Plaintiff Andrade Rigazzi was on target to achieve his goals even after a resetting of the sales goals in April, Plaintiff Andrade Rigazzi was informed in June that his employment was being terminated "for cause" because Plaintiff Andrade Rigazzi was allegedly not meeting the newly established sales goals.

45. After Plaintiff Andrade Rigazzi was terminated, his job responsibilities were given to a substantially younger and less qualified, Caucasian/American employee.

46. Understand further that the Company's decision to terminate Plaintiff Andrade Rigazzi's employment was part of a larger pattern and practice to remove a number of older, minority employees including the other Plaintiffs. Each of the persons who were terminated in mid-June 2023 had their positions and job duties assigned to employees who were substantially younger, Caucasian, and male.

47. Plaintiff Andrade Rigazzi's termination was further characterized as a "for cause" termination even though the second quarter had not ended, and he had met his first quarter goals and was also on target to meet his goals for the second quarter and the sales quotas upon which this "cause" characterization was based was only set in April and was specifically referred to as being "unattainable" and "unrealistic" by ABSG's senior management.

48. At all times relevant hereto, Plaintiff Andrade Rigazzi was qualified for his position as a Director.

**Plaintiff Beushausen**

49. Plaintiff Beushausen is a fifty-six year old (56) and female

50. Like the others, Plaintiff Beushausen was terminated in June 2023.

51. Like the other Plaintiffs, Plaintiff Beushausen was terminated "for cause" for not meeting the unrealistic sale's goal that were set in April 2023, even though she was not assigned a sales quota.

52. After Plaintiff Beushausen's termination Defendant transferred Plaintiff Beushausen's job duties and position to a substantially younger male employee, who had significantly less experience and was actually one of the lowest performing sales people.

53. Defendant promoted Mr. Jason Smith to take Plaintiff Beushausen's position.

54. Mr. Smith was a male in his early 40s, who did not have an MBA or the years of experience that Plaintiff Beushausen had.

55. After Plaintiff Beushausen was terminated Defendants gave Mr. Smith the "Director of Business Development" title that she previously held and further gave him management of ABSG's sales organization that Plaintiff Beushausen previously managed.

56. As further evidence of gender discrimination, during a conference in Las Vegas shortly before Plaintiff Beushausen was terminated, her senior, male manager, told Plaintiff Beushausen that she should limit her interactions with a certain potential partner that they were meeting with.

57. Defendant's senior level, male, Caucasian manager specifically instructed Plaintiff Beushausen to only answer the "soft ball" questions and to defer all the "hard ball" questions to the other younger males attending the meeting.

58. When Plaintiff Beushausen asked what was meant by this instruction and protested this direction, Defendant's senior level, male, Caucasian manager shut Plaintiff Beushausen out of several follow-up conversations with the customer even though Plaintiff Beushausen was primarily responsible for establishing the relationship with the client being met with and had a clear working understanding as to the customer's needs.

59. Before this meeting Plaintiff Beushausen received nothing but praise and positive feedback about her performance and the performance of her team which included the other Plaintiffs.

60. Absolutely no prior notice was given to Plaintiff Beushausen that Defendant was reviewing her position or that her job was in anyway in jeopardy. In fact, before Plaintiff Beushausen was notified of her termination, she had never been told that the Defendant was considering any action that would impact her position.

61. Plaintiff Beushausen's termination was characterized as a "for cause" termination even though the sales quotas upon which this "cause" was based was only set in April and was specifically referred to as being "unattainable" and "unrealistic" by ABSG's senior management.

**Plaintiff Shannon Vendt**

62. Plaintiff Vendt is age (47) and gender (female) and race (Hispanic).

63. Like the other Plaintiffs, Defendant terminated Plaintiff Vendt's employment in June 2023 based on a claim that the termination was "for cause" given that she and the other Plaintiffs were not meeting the unrealistic sale's goals that had been reset in April 2023.

64. Before February of 2023, Plaintiff Vendt was working as an SDR (supportive development representative).

65. In that role Plaintiff Vendt was responsible for helping to follow up on leads and had no quota.

66. Even though it wasn't within her duties as an SDR, Plaintiff Vendt further helped to close several large accounts for Defendant and at least one large new account.

67. In February 2023 Plaintiff Vendt was moved to a hybrid SDR/Business Development role.

68.  As part of that move Plaintiff Vendt was told that the accounts that she had previously closed as an SDR would be assigned to her.

69. After assuming the new position, however, Defendant only gave Plaintiff Vendt a small percentage of the accounts she had previously worked and helped close, with a majority of the accounts going to the younger, male business development employees.

70. Plaintiff Vendt was further told by Defendants' senior managers that she needed to develop her "BusDev" opportunities from nothing and was very successful at doing so until Defendant terminated her employment along with the other Plaintiffs.

71. Shortly before her termination, Defendants' senior management instructed Plaintiff Vendt to assign some of her largest accounts to a younger, male who had very little experience so that he could meet his sales quotas.

72. Shortly after this direction, Plaintiff Vendt had her quotas increased to an unrealistic level and an amount that no male business development person who was new to the role was given.

73. When Plaintiff Vendt questioned her new quotas, particular since Defendants had just directed Plaintiff Vendt to transfer some of her best performing accounts, Plaintiff Vendt was told not to worry as she was doing an excellent job.

74. Yet, when Plaintiff Vendt was terminated a short time later, Defendants told Plaintiff Vendt that she was being terminated "for cause" because she was not meeting her quotas. Yet the younger, Caucasian male to whom Defendants directed Plaintiff Vendt to transfer her accounts to just weeks before, was not terminated.

75. After Plaintiff Vendt was terminated, Defendant assigned this younger, less experienced Caucasian male all of the accounts that Plaintiff Vendt previously had while working at ABSG. Moreover, this younger, Caucasian male received the benefit of having the sales Plaintiff Vendt completed in Q2 rolled over into Q3 and has realized the benefit of a large account that Plaintiff Vendt closed mere days before my termination.

76. Had Defendants applied the same analysis to Plaintiff Vendt's performance that was given to the younger, Caucasian male, Plaintiff Vendt would have been found to have been on track for

Case 4:24-cv-01425   Document 1   Filed on 04/19/24 in TXSD   Page 13 of 22

meeting her quota even though it was highly unrealistic when it was originally set just weeks before.

77. As further evidence of discrimination and harassment based on Plaintiff Vendt's gender, Defendant senior level managers sent a degrading email about Plaintiff Vendt to several co-workers and customers that Plaintiff Vendt was servicing that discussed the fact that by moving into the Business Development role, Plaintiff Vendt would need to start "working with [her] clothes on from the waist down" going forward.

78. When Plaintiff Vendt complained to Defendants' senior management about this treatment, Plaintiff Vendt was instructed not to raise the matter with HR and was told to just write a letter and then just drop the issue.

79. Defendants never took any further action except that before Plaintiff Vendt's complaints about her supervisor's comments, Plaintiff Vendt received nothing but praise and positive feedback about her performance.

80. Absolutely no prior notice was given to Plaintiff Vendt that the Defendants were reviewing her position or that her job was in anyway in jeopardy. The abrupt decision by Defendants to reassign Plaintiff Vendt's job duties to a substantially younger, less qualified Caucasian male, and to terminate her employment shortly after her complaints about her manager, however, demonstrates that Plaintiff Vendt was not only discriminated against because of her age, race and gender, but also was subjected to retaliation.

**Statements by Management**

81. Within days of the termination of the Plaintiffs' employment "for cause" and because of the sales quotas not being met, the Defendant had a meeting with Defendant's senior level management during which they specifically represented that the Company's sales and revenue goals were all "on target" for the year.

82. Since the Defendants' termination of the Plaintiffs several senior level managers of Defendant have stated that the termination of the Plaintiffs were in fact intended to get rid of some of the older minority employees and get younger Caucasian males who were not minorities promoted.

## FIRST CAUSE OF ACTION

### Age Discrimination under Texas Labor Code – Plaintiff Smith, Plaintiff Andrade Rigazzi, and Plaintiff Vendt

83. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

84. At all relevant times, Plaintiffs were "employees" within the meaning of the Texas Labor Code, and Defendant was an "employer" within the meaning of the Texas Labor Code.

85. As outlined above, Defendant violated the Texas Labor Code when it discriminated against Plaintiff because of their age by assigning their accounts to younger employees and falsely claiming that Plaintiffs were being terminated because they were not meeting their sales quotas which were unrealistic and set shortly before Defendants terminated Plaintiff Smith, Plaintiff Andrade Rigazzi, and Plaintiff Vendt.

86. As a direct and proximate result of Defendant's discriminatory conduct in violation of the Texas Labor Code, Plaintiffs Smith, Andrade Rigazzi,and Vendt have suffered, and continue

to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiffs are entitled to an award of damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION

### Age Discrimination under the Age Discrimination in Employment Act ("ADEA") – All Plaintiffs

87. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

88. At all relevant times, Plaintiffs were "employees" within the meaning of the ADEA, and Defendants were an "employer" within the meaning of the ADEA.

89. As outlined above, Defendants violated the ADEA when it discriminated against Plaintiffs because of their age by giving their positions to and assigning their accounts to substantially younger employees and falsely claiming that Plaintiffs were terminated "for cause" because they were not meeting their recently established sales quotas.

90. As a direct and proximate result of Defendants' discriminatory conduct in violation of the ADEA, Plaintiffs have each suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of damages, liquidated damages, attorney's fees, and costs.

## THIRD CAUSE OF ACTION

### Retaliation under Texas Labor Code - Plaintiff Smith, Plaintiff Andrade Rigazzi, and Plaintiff Vendt

91. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

92. At all relevant times, Plaintiffs Smith, Andrade Rigazzi, and Vendt were an "employee" within the meaning of the Texas Labor Code.

93. At all relevant times, Defendants were an "employer" within the meaning of the Texas Labor Code.

94. As outlined above, Defendants violated the Texas Labor Code when they retaliated against Plaintiffs Smith, Andrade Rigazzi, and Vendt by assigning their clients to employees who had not made complaints and had not participated in activities protected by Title VII and the ADEA.

95. As a direct and proximate result of Defendants' retaliatory conduct in violation of the Texas Labor Code, Plaintiffs Smith, Andrade Rigazzi, and Vendt have each suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of damages, attorney's fees, and costs.

## <u>FOURTH CAUSE OF ACTION</u>
### Retaliation under the ADEA – All Plaintiffs

96. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

97. At all relevant times, Plaintiffs were an "employee" within the meaning of the ADEA Code.

98. At all relevant times, Defendants were an "employer" within the meaning of the ADEA.

99. As outlined above, Defendants violated the ADEA when they retaliated against Plaintiffs by claiming that each of the Plaintiffs were being terminated "for cause."

100.    As outlined above, Defendants violated the ADEA when they retaliated against Plaintiffs by terminating each of the Plaintiffs after their participating in protected activities.

101.    As a direct and proximate result of Defendants' retaliatory conduct in violation of the ADEA, Plaintiffs have each suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiffs are entitled to an award of damages, attorney's fees, and costs.

### FIFTH CAUSE OF ACTION

**Gender Discrimination under Title VII, 42 U.S.C. §2000e, *et. seq*.– Plaintiff Beushausen, Plaintiff Vendt**

102.    Plaintiffs Beushausen and Plaintiff Vendt each allege and incorporate by reference the allegations in the preceding paragraphs.

103.    At all relevant times, Plaintiffs Beushausen and Plaintiff Vendt were an "employee" within the meaning of Title VII and Defendants was an "employer" within the meaning of the Title VII.

104.    As outlined above, Defendants violated the Title VII when it discriminated against Plaintiff Beushausen and Plaintiff Vendt because of their gender by giving their positions to and assigning their accounts to less qualified males and falsely claiming that Plaintiffs were terminated "for cause."

105.    As outlined above, Defendants violated the Title VII when it discriminated against Plaintiff Beushausen and Plaintiff Vendt because of their gender by holding them to higher standards

of performance than the male employees to whom their job duties and accounts were assigned after Defendant terminated Plaintiff Beushausen and Plaintiff Vendt.

106.    As a direct and proximate result of Defendant's discriminatory conduct in violation of the Title VII, Plaintiffs Beushausen and Plaintiff Vendt have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiffs are entitled to an award of damages, liquidated damages, attorney's fees, and costs.

## SIXTH CAUSE OF ACTION

**Race Discrimination under Texas Labor Code– Plaintiff Andrade Rigazzi, Plaintiff Vendt**

107.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

108.    At all relevant times, Plaintiffs Andrade Rigazzi and Plaintiff Vendt were an "employee" within the meaning of Texas Labor Code.

109.    At all relevant times, Defendants were an "employer" within the meaning of the Texas Labor Code.

110.    As outlined above, Defendants violated the Texas Labor Code when they discriminated against Plaintiff Andrade Rigazzi and Plaintiff Vendt because of their race by giving their positions to and assigning their accounts to less qualified Caucasian males and falsely claiming that Plaintiffs were terminated "for cause."

111.    As outlined above, Defendants violated the Texas Labor Code when they discriminated against Plaintiff Andrade Rigazzi and Plaintiff Vendt because of their race by holding them to

higher standards of performance than the Caucasian employees to whom their job duties and accounts were assigned after Plaintiff Andrade Rigazzi and Plaintiff Vendt were terminated.

112.    As a direct and proximate result of Defendants' discriminatory conduct in violation of the Title VII, Plaintiffs Andrade Rigazzi and Plaintiff Vendt have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiffs are entitled to an award of damages, liquidated damages, attorney's fees, and costs.

## <u>SEVENTH CAUSE OF ACTION</u>

**Race Discrimination under Title VII, 42 U.S.C. §2000e, *et. seq*.– Plaintiff Andrade Rigazzi, Plaintiff Vendt**

113.    Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

114.    At all relevant times, Plaintiffs Andrade Rigazzi and Plaintiff Vendt were an "employee" within the meaning of Title VII.

115.    At all relevant times, Defendants were an "employer" within the meaning of the Title VII.

116.    As outlined above, Defendants violated the Title VII when they discriminated against Plaintiff Andrade Rigazzi and Plaintiff Vendt because of their race by giving their positions to and assigning their accounts to less qualified Caucasian males and falsely claiming that Plaintiffs were terminated "for cause."

117.    As outlined above, Defendants violated the Title VII when they discriminated against Plaintiff Andrade Rigazzi and Plaintiff Vendt because of their race by holding them to higher

standards of performance than the Caucasian employees to whom their job duties and accounts were assigned after Plaintiff Andrade Rigazzi and Plaintiff Vendt were terminated.

118.    As a direct and proximate result of Defendants' discriminatory conduct in violation of the Title VII, Plaintiffs Andrade Rigazzi and Plaintiff Vendt have suffered, and continue to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiffs are entitled to an award of damages, liquidated damages, attorney's fees, and costs.

## ATTORNEYS' FEES AND COSTS

119.    Plaintiffs incorporate each of the foregoing paragraphs.

120.    Plaintiffs retained the services of undersigned counsel to prosecute Plaintiffs' claims.

121.    Pursuant to the ADEA, Title VII, and the Texas Labor Code section 21.259, Plaintiffs are entitled to recover a reasonable attorneys' fee from Defendants, including reasonable expert fees.

## INTEGRATED ENTERPRISE/
## JOINT EMPLOYER/JOINT AND SEVERAL LIABILITY

122.    Plaintiffs incorporate each of the foregoing paragraphs.

123.    Defendants are an integrated enterprise.

124.     Defendants have interrelated operations, and/or centralized control of labor relations and other employment decisions, and/or common management, and/or common ownership and/or financial control.

125.     Defendants jointly exerted authority over Plaintiff's employment and/or had the right to exert authority over Plaintiff's employment.

126.     Defendants are joint employers of Plaintiff.

127.     Defendants are jointly and severally liable for Plaintiffs' injuries and damages.

## RESPONDEAT SUPERIOR

128.     Plaintiffs incorporate each of the foregoing paragraphs.

129.     Defendants are liable for the acts and/or omissions of their respective agents, representatives, employees, servants, and officers.

## JURY DEMAND

130.   Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that an award be issued in his favor providing the following relief:

1. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the state of Texas and federal law;

2. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

3. An order directing Defendants to place Plaintiffs in the position he would have occupied but for Defendants' discriminatory, retaliatory, and/or otherwise unlawful treatment of Plaintiffs, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Plaintiffs;

4. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security, and other benefits of employment;

5. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for harm to Plaintiffs' professional and personal reputation and loss of career fulfillment;

6. An award of damages for all other monetary and/or non-monetary losses Plaintiffs suffered in an amount to be determined at trial, plus prejudgment interest;

7. An award of costs that Plaintiff has incurred in this action, as well as Plaintiffs' reasonable attorneys' fees to the fullest extent permitted by law; and

8. Such other and further relief, both at law and in equity, as the Court may deem just and proper.


**/s/ Mark D Downey**

_____

Mark D. Downey, *attorney in charge*
Texas Bar No. 00793637
4516 Lovers Lane
Dallas, Texas 75225
Phone: 214-764-7279
mdowney@dlawgrp.com
**ATTORNEYS FOR PLAINTIFF**